IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PEDRO I. RAEL,**

       **Plaintiff,**

vs.                                                                                      No.  02cv0052 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on Plaintiff's (Rael's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 9]**, filed July 1, 2002, and fully briefed on October 1, 2002.  The Commissioner of Social Security issued a final decision denying Rael's application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

**I.  Factual and Procedural Background**

      Rael, now fifty-five years old, filed his application for disability insurance benefits and supplemental security income on March 9, 1998, alleging disability since October 1, 1996, due to chronic pancreatitis, diabetes, depression and a post-traumatic stress disorder related to service in Viet Nam. Tr. 13.  Rael has a high school education and past relevant work as a construction laborer and custodian.  On October 21, 1999, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Rael's chronic pancreatitis, diabetes, depression and a post-

traumatic stress disorder were severe impairments but did not "meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 13. The ALJ further found Rael retained the residual functional capacity (RFC) to perform "a wide range of medium work activities, with only the limitations against hazardous environments . . . ." Tr. 16. As to his credibility, the ALJ found that Rael's testimony "was significantly lacking in credibility." Tr. 14. Rael filed a Request for Review of the decision by the Appeals Council. On December 14, 2001, the Appeals Council denied Rael's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Rael seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Rael makes the following arguments: (1) the ALJ's RFC determination is not supported by the evidence and is contrary to law; (2) the ALJ's credibility determination is not supported by the evidence and is contrary to law; and (3) the ALJ erred in applying the Medical-Vocational Guidelines (the grids) conclusively. The Court will address the ALJ's credibility determination first.

## A.  Credibility Determination

Rael contends the ALJ's credibility determination is not supported by substantial evidence and is contrary to law. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). "Because [e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court, we generally treat credibility determinations made by an ALJ as binding upon review." *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)(internal quotations omitted).

In his decision, the ALJ found Rael "significantly lacking in credibility." Tr. In support of his credibility determination, the ALJ gave the following reasons:

> It is apparent from the record that the claimant's pancreatitis and diabetes are the direct result of heavy and prolonged polysubstance abuse, primarily alcohol. Although he has told his treating doctors that he quit drinking several years ago, and so testified, the clinical

4

> record of his hospital admission on January 12, 1998, reports that he had been drinking several days before the attack. (It must be noted, however, that the discharge note state that he had not taken a drink, by his history, for the previous year.)
>
> The claimant's testimony was significantly lacking in credibility. He said he had not taken a drink for four years, which I have previously noted is contrary to what he reported to his doctor. He denied drug use, yet the record shows that he continues to use marijuana regularly. He said he was able to walk only for 2 blocks, yet he actually walks a lot. His testimony portrayed very limited activities, yet he goes fishing regularly, socializes and engages in multiple activities. Although it is evident that he continues with some problems related to his pancreatitis, the record and the testimony clearly indicate that he has the residual functional capacity for significant work-like activities. Having considered all of the facts, it is my conclusion that he retains the physical capacity to lift and carry weights of 50 pounds occasionally, and 25 pounds frequently. I find nothing that would preclude him from standing and/or walking for two hour intervals, and for up to six hours during a regular eight hour work-day. He has the residual functional capacity for work up to and including medium exertional levels. Significant to my findings herein is the results of the MMPI-II test administered on February 9, 1999. The responses on the test were said to be consistent with exaggeration, distortion of the problems or malingering. Such was my impression of the claimant from my review of the record and my observation during the hearing.

Tr. 15 (citations to record omitted). The January 12, 1998 hospital admission notes indicates that Rael reported "no alcohol use x 1 year." Tr. 150. During that same hospital admission, the attending physician noted under social history "last drink 2 days ago." Tr. 153. Upon discharge, under the heading "Hospital Course," the physician indicated that Rael had given a history of alcohol abuse but none for the past year. Tr. 151. As a precaution, "the patient was placed on Ativan prn (as needed) for any possible withdrawal symptoms." *Id.* The discharge notes indicate that Rael "never required Ativan and experienced no episodes of tremors, anxiety, or any other withdrawal type symptoms." *Id.* The Court has reviewed the entire record and this January 12, 1998 notation by the attending physician is the only notation that indicates Rael was still abusing alcohol. There is, however, evidence that Rael gave conflicting information regarding the length of his sobriety, which ranged anywhere from one year to five years. Tr. 149 (stopped drinking

one year ago); Tr. 105 (stopped drinking two years ago); Tr. 172 (reported to Dr. Karp that he stopped drinking five years ago)

It is also clear from the record that Rael prevaricated about his marijuana use. He testified that he had not used marijuana since 1992. Tr. 296. However, the record indicates he uses marijuana two to three times a week. Tr. 105. Additionally, he reported to Dr. Thomas B. Vosburgh, a Veterans Administration psychiatrist, that he uses marijuana daily because it "calmed" him. Tr. 214-15. Dr. Vosburgh reported that Rael's wife condoned this activity because it made "pt easier to live with and more comfortable." Tr. 215.

Rael also testified that he could only walk "about two blocks" and reported a very sedentary life style. However, the record indicates that in his May 11, 1998 Daily Activities Questionnaire, Rael reported walking "most of the day" for up to eight miles. Tr. 68. Additionally, on January 5, 1999, seven months before the administrative hearing, the nurse noted "more active recently, collects cans and recycles so walks a lot." Tr. 203. Rael also reported to Dr. Karp that he had hobbies which included "watching sports, and fishing, camping and hiking." Tr. 172. According to Dr. Karp's evaluation, "in the summer [Rael] and his wife go fishing about three times a week," "spend a lot of time together," "he sees friends daily," and "sees his mother and father daily." *Id.*

Finally, the ALJ placed great significance on the results of the February 9, 1999 MMPI-II test administered by Dr. Evelyn Sandeen, a psychologist. Tr. 199. According to the ALJ, "the responses on the test were said to be consistent with exaggeration, distortion of the problems or malingering." Tr. 15. Dr. Sandeen's evaluation indicated the following:

> Pt was administered the MMPI-II as part of a comprehensive evaluation of trauma-related symptoms and treatment needs.  <u>The following statements are to be viewed as hypotheses subject to verification through further testing or clinical observation</u>.
> <u>Care should be taken to confirm the accuracy of this report</u>, as people who responded as Mr. Rael did **may** have a response set which leads them to exaggerate or distort their problems.  Such a response set <u>may be a 'cry for help,' acute disturbance, **or** malingering</u>.
>
> Persons who respond to the questions on the MMPI-II as Mr. Rael did typically have vague, medically atypical complaints.  Their thinking may be impaired, with periods of confusion and disorientation present.  They may be seen as 'strange' in thought and behavior by others.  Their somatic preoccupations may serve the function of warding off a psychotic-like break with reality.  The possibility of a psychotic or pre-psychotic state should be considered.  Persons with Mr. Rael's profile are usually unable to gain insight in therapy or to benefit from support and reassurance.
>
> The patient is depressed.  He <u>may</u> display conflicts with authority, acting out behavior, and have high levels of anxiety and tension.

Tr. 199 (emphasis added).  The record does not reflect that further testing took place to confirm Dr. Sandeen's "hypotheses."  However, Dr. Karp, an agency consultant and a psychiatrist, performed a comprehensive psychiatric evaluation on November 6, 1998.  Dr. Karp found Rael "was friendly and cooperative," "showed no loosening of associations," displayed "no evidence of any hallucinations or delusions," "denie[d] perceptual distortions," "affect [was] slightly flattened," "no labile affect [was] noted," "affect [was] appropriate to content," "denie[d] suicidal or homicidal ideas," "[was] of low intelligence," "had no insight into his situation," "[was] oriented in all spheres," and there was "no evidence of memory impairment for recent or past memory."  Tr. 174.  Dr. Karp diagnosed Rael with mild Post Traumatic Stress Disorder and mild dysthymia.[1]  *Id.*  Dr. Karp assigned Rael a Global Assessment of Functioning (GAF) score of 70.[2]

---

[1] The essential features of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least two years.  American Psychiatric Assoc.,

7

Although Dr. Sandeen's report was not conclusive and cannot support the ALJ's statement that Rael was exaggerating or distorting his problems or malingering, nonetheless, substantial evidence supports the ALJ's finding that Rael was not wholly credible.

### B.  Medical-Vocational Guidelines (the grids)

At step four of the sequential evaluation process, the ALJ found Rael could not return to his past work as a construction laborer or custodian. Tr. 15. The ALJ considered the fact that Rael required "heavy narcotic pain medication" but found that "despite his impairments" there were still jobs in significant numbers in the national economy that were compatible with Rael's RFC. Tr. 16. Relying on the grids, specifically Rule 203.21, the ALJ concluded that Rael was not disabled. Rael contends the ALJ erred in relying on the grids conclusively. The Court agrees.

The grids represent the Commissioner's administrative notice of the jobs that exist in the national economy at the various functional levels (i.e. sedentary, light, medium, heavy, and very heavy). *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984). If the ALJ's findings of fact regarding a particular individual's age, education, training, and RFC all coincide with the criteria of a particular rule on these grids, the Commissioner may conclude that jobs suitable for the claimant exist in the national economy and that the claimant therefore is not disabled. *Id.*

---

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), (4th ed. 1994),  p. 376.

[2] A Global Assessment of Function score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV-TR at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death.). DSM-IV-TR at 32. A GAF score of 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty with in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34.

Because the grids classify RFC based only on exertional or physical strength limitations, they may not be fully applicable to claimants with nonexertional impairments.  See 20 C.F.R. 404.1567; *Channel,* 747 at 580-81.  Nonexertional impairments are medically determinable impairments, **including pain**, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless.  *Id.* at 580.

If nonexertional impairments narrow the range of possible work the claimant can perform, the Commissioner may only use the grids as a "framework" for determining whether, in light of all claimant's impairments, he has meaningful employment opportunity within the national economy.  20 C.F.R. pt. 404, subpt. p, app. 2, § 200 (e) (2).  In such cases, the Commissioner must also produce a vocational expert to testify whether specific jobs appropriate to claimant's limitations exist in the national economy.  *Channel*, 747 F.2d at 581.

It is clear from the record that Rael takes Oxycodone 5 mg and morphine sulfate 30 mg on a daily basis to control pain.  Oxycodone and morphine are strong narcotic analgesics used for the management of moderate to severe pain.  *See Physicians' Desk Reference* 2574 & 2757 (53rd ed. 1999).  Rael has consistently been diagnosed with chronic pancreatitis which is capable of producing disabling pain.  *See e.g., The Merck Manual of Diagnosis and Therapy* 273 (17th ed. 1999)(describing chronic pancreatitis as producing severe epigastric pain, usually steady and boring and persisting for several days accompanied by nausea and vomiting).  Additionally, the record confirms several episodes of exacerbations requiring several visits to the VA emergency room (Tr. 116, 118, 131-38, 143-48, 156, 158, 161, 162, 163-66, 200-01, 209, 221) and more than one hospitalization (Tr. 149-55, 229-333).  Rael testified that his most significant medical problem that kept him from working was "taking the morphine."  Tr. 297.  Rael elaborated by

9

explaining that if he did not take his pain medication he would end up in the hospital.  *Id.*  Rael also testified that the pain medication made him sleepy and "I can't stay awake."  Tr. 300.  Rael testified that he had "to live with the pain or take the pills" but that if he "quit taking the pills then [he would] have to suffer with the pain."  Tr. 298.  His wife also testified that his condition "had gotten worse" and he had lost significant weight.  Tr. 308.  "Pain even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant."  *Thompson*, 987 F.2d at 1490-91.  In this case, the evidence does not support a finding that Rael's pain is insignificant.  Accordingly, the Court finds that the ALJ erred in applying the grids conclusively.

## C.  Conclusion

Substantial evidence supports the ALJ's credibility determination.  However, the ALJ erred in applying the grids conclusively.  On remand, the ALJ should evaluate Rael's pain pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987),  reconsider his RFC finding and consult with a vocational expert.  The ALJ should also investigate the side effects of Rael's pain medications and how it impacts his ability to engage in substantial gainful activity.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. No. 9]**, is granted.  This matter is remanded to allow the ALJ to evaluate Rael's pain pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987),  reconsider his RFC finding and

consult with a vocational expert. The ALJ should also investigate the side effects of Rael's pain medications and how it impacts his ability to work.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**